**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Julius Bonayon, | ) | Civil Action No. 2:22-01577-RMG |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The Boeing Company, | ) | **ORDER AND OPINION** |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court upon the Report and Recommendation ("R & R") of the Magistrate Judge recommending the Court grant in part and deny in part Defendant's motion to dismiss the complaint. (Dkt. No. 10). For the reasons stated below, the Court adopts in part and declines to adopt in part, the R & R of the Magistrate Judge.

**I.    Background**

Julius Bonayon ("Plaintiff") brings claims against his former employer, The Boeing Company ("Defendant"), for race discrimination in violation of 28 U.S.C. § 1981 and Title VII, as well as national origin discrimination in violation of Title VII; disability discrimination under the Americans with Disabilities Act; hostile work environment based on national origin discrimination in violation of Title VII; retaliation in violation of Title VII; and retaliation under the Family Medical Leave Act ("FMLA"). (Dkt. No. 1). Plaintiff alleges he is from the Philippines, and that he is Asian. (Dkt. No. 1-1 ¶ 11). Plaintiff alleges that while employed by Defendant, he was treated differently than other employees based on his race/national origin by his direct supervisor, Timothy Mason, and Alvaro Hormaza, the manager that sometimes filled in for Mason. (*Id.* ¶¶ 7, 16, 20). Plaintiff alleges Mason and Hormaza gave Plaintiff excessive jobs

while other employees were allowed to play video games. (*Id.* ¶ 26). Plaintiff alleges twenty-five employees reported to Mason, but out of these employees only Plaintiff and one other were Asian. (*Id.* ¶ 27). Plaintiff alleges both he and the other Asian employee filed complaints regarding differential treatment. (*Id.* ¶ 49). Plaintiff alleges Defendant allowed Plaintiff's supervisor to treat Caucasian employees more favorably without repercussions. (*Id.* ¶¶ 49-52).

Plaintiff alleges he intended to use sick leave December 3, 2019, through January 9, 2020, to visit the Philippines. (*Id.* ¶ 21). Plaintiff alleges he planned to return to work on January 10, 2020 and intended to use leave without pay during his absence. (*Id.*). Plaintiff contends that Mason agreed to this plan. (*Id.* ¶¶ 21-22). On his return home from the Philippines, Mason informed Plaintiff he was expected back at work on January 7, 2020. (*Id.* ¶ 29). Plaintiff told Mason he was not feeling well. (*Id.* ¶ 30). After, Plaintiff suffered a medical emergency at the airport and was taken to the hospital where he learned he had suffered a severe panic attack. (*Id.* ¶¶ 30- 32). Plaintiff received a medical certificate from the doctor on January 9, 2020. (Dkt. No. 8-1 at 11). Plaintiff alleges he told Mason about his medical emergency and Mason replied "ok" and would "place Plaintiff on the [FMLA]." (*Id.* ¶ 31). On January 15, 2020, Mason fired Plaintiff for his absences from work. (*Id.* ¶¶ 34-36). Plaintiff alleges he had a history with anxiety that Defendant was aware of. (*Id.* ¶ 62).

Defendant filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 3). The motion is fully briefed. (Dkt. Nos 8; 9). Defendant filed partial objections to the R & R. (Dkt. No. 11). Plaintiff filed partial objections to the R & R. (Dkt. No. 12). Defendant filed a reply to Plaintiff's objections. (Dkt. No. 13). The matter is ripe for the Court's review.

## II. __Legal Standard__

The Magistrate Judge makes only a recommendation to this Court that has no presumptive weight.  The responsibility to make a final determination remains with the Court.  *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  This Court must make a *de novo* determination of those portions of the R & R Plaintiff specifically objects.  Fed. R. Civ. P. 72(b)(2).  Where Plaintiff fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted).  "Moreover, in the absence of specific objections to the R & R, the Court need not give any explanation for adopting the recommendation." *Wilson v. S.C. Dept of Corr.*, No. 9:14-CV-4365-RMG, 2015 WL 1124701, at *1 (D.S.C. Mar. 12, 2015).  *See also Camby v. Davis*, 718 F.2d 198, 200 (4th Cir.1983).

### III.    Discussion

#### a)  Race and National Origin Discrimination Claims

Defendant moves to dismiss Plaintiff's claim for race discrimination pursuant to Title VII and Section 1981, and national origin discrimination claim pursuant to Title VII.  The Magistrate Judge construed Plaintiff's national origin and race discrimination claims as disparate treatment claims pursuant to Title VII and Section 1981.  (Dkt. No. 10 at 12).  The Magistrate Judge found the allegations stated in Plaintiff's complaint sufficiently stated a claim that Plaintiff was treated differently than similarly situated individuals outside of his protected class and recommended denial of Defendant's motion to dismiss Plaintiff's claims for race discrimination under Title VII and Section 1981, and national origin discrimination under Title VII.  Defendant objects to the R & R solely on the ground the Magistrate Judge incorrectly relied on Plaintiff's allegations

3

regarding race to support a claim based on a separate and distinct category-national origin. (Dkt. No. 11 at 2).

Race and national origin are ideologically distinct under Title VII. *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996). Plaintiff may not sustain a national origin disparate treatment claim based only on allegations related to his race. *Kun*, 949 F. Supp. at 19 (noting the "legislative history of [Title VII] enunciates precisely that a person's national origin has nothing to do with color, religion, or race."); *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973) ("The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country form which his or her ancestors came.")).

Upon a review of the complaint, Plaintiff alleges he was "treated differently," was "discriminated against," and "terminated" based on his "race/national origin." (Dkt. No. 1-1 ¶¶ 7, 38, 49, 52). While race and national origin are two distinct categories under Title VII, accepting the well-plead allegations as true, the complaint may be read to give rise to an inference of discrimination based on race and national origin. The Court overrules Defendant's objection and agrees with the Magistrate Judge that Plaintiff's complaint sufficiently states a clam for national origin discrimination claim under Title VII and race discrimination pursuant to Title VII and 42 U.S.C. § 1981. Defendant's motion to dismiss is denied with respect to these claims.

### b) ADA Discrimination Claim

Defendant moves to dismiss Plaintiff's ADA discrimination claim for failure to exhaust administrative remedies, or in the alternative failure to plead a disability protected under the ADA. First, the Magistrate Judge comprehensively analyzed this issue to correctly determine that Plaintiff properly exhausted his discrimination claim under the ADA as it applies to his anxiety. (Dkt. No. 10 at 16-16). Defendant does not object to this finding.

Next, the Magistrate Judge analyzed the sufficiency of the allegations contained in Plaintiff's complaint to determine that Plaintiff failed to allege facts that reasonably infer Defendant regarded him as disabled under the ADA. Plaintiff objects to this finding on the ground he pled Defendant was aware of his anxiety before his trip to the Philippines. The complaint sparsely alleges Defendant was aware of Plaintiff's "history of issues with anxiety," but fails to allege any additional facts to contextualize Defendant's knowledge of that history. (Dkt. No. 1-1 ¶ 62). There are no allegations to show Defendant was aware of these issues prior to Plaintiff's conversation with Mason where he told Mason he was "not feeling well." (*Id.*). Plaintiff does not allege his anxiety was mentioned at any point during his conversation with Mason. (Dkt. No. 1-1 at 7; 8-1 at 10). The Court overrules Plaintiff's objection and agrees with the finding of the Magistrate Judge that the complaint's conclusory allegations without more fail to demonstrate Defendant regarded him as disabled. The complaint fails to state an ADA discrimination claim upon which relief may be granted. Defendant's motion to dismiss is granted as to Plaintiff's ADA discrimination claim.

### c) Title VII Hostile Work Environment

Defendant moves to dismiss Plaintiff's Title VII hostile work environment claim for failing sufficiently allege he suffered severe or pervasive treatment, or in the alternative that he failed to provide sufficient factual detail to demonstrate the hostile treatment was based on his national origin. (Dkt. No. 3-3 at 14). The Magistrate Judge determined Plaintiff's complaint fails to state a hostile work environment claim because the allegations merely restate the elements of a hostile work environment claim. (Dkt. No. 10 at 20). Plaintiff objects to the finding of the Magistrate Judge on the ground the Court failed to consider all the allegations in the complaint. (Dkt. No. 12 at 6). Plaintiff cites several paragraphs of the complaint he claims the Magistrate Judge

overlooked. (Dkt. No. 12 at 6-7) (citing Dkt. No. 1 ¶¶ 10-18). The Court will review the allegations in the complaint.

The complaint alleges Defendant "subjected [Plaintiff] to harassment and [a] hostile work environment"; "Plaintiff's work environment was abusive, to the point of severe and pervasive"; and "Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's National Origin." (Dkt. No. 1-1 ¶ 13). Plaintiff alleges he had an argument with Hormaza because he was doing work for Mason. (*Id.* ¶ 20). Plaintiff did not report this to HR because he feared retaliation. (*Id.*). On two occasions, Plaintiff told Mason about his travel plans that would require him to use leave, and Mason never informed Plaintiff he could not use leave. (*Id.* ¶¶ 24-25). Mason terminated Plaintiff for excessive absences. (*Id.* ¶ 36). Plaintiff alleges Mason and Hormaza gave him excessive jobs while other employees were allowed to play video games, and the only two Asian employees under the supervision of Mason filed complaints regarding discriminatory treatment. (*Id.* ¶¶ 26, 49). Viewing the well-plead allegations as true, the Court finds that at this stage in the pleadings, Plaintiff sufficiently states a Title VII claim for hostile work environment claim based on race. Defendant's motion to dismiss is denied as to this claim.

### d)  Title VII Retaliation

Defendant moves to dismiss Plaintiff's Title VII retaliation claim for failure to exhaust administrative remedies. The Magistrate Judge comprehensively analyzed this issue to correctly determine that Plaintiff exhausted his administrative remedies as to this claim. (Dkt. No. 10 at 21-23). Defendant does not object to this finding.

The Magistrate Judge determined the complaint fails to state a Title VII retaliation claim for failing to allege facts that establish a causal connection between Plaintiff's protected activity and the adverse employment action taken against him. Plaintiff objects to the finding of the

Magistrate Judge on the ground he set forth a retaliation claim pursuant to 42 U.S.C. § 1981, not under Title VII. (Dkt. No. 12 at 7-8). The Court finds Plaintiff's objection is without merit because the complaint only asserts a retaliation claim pursuant to Title VII, not 42 U.S.C. § 1981.

Plaintiff also objects to the dismissal of his Title VII retaliation claim on the ground he clearly set forth all elements of a retaliation claim in the complaint. (Dkt. No. 12 at 8). The complaint alleges Plaintiff "participated in a protected act when he reported discrimination and retaliation"; and "Defendant took adverse employment action against the Plaintiff because he had engaged in protected activity pursuant to Title VII when he complained of national origin discrimination and race discrimination." (Dkt. No. 1-1 at 14). The Magistrate Judge construed these allegations to determine the protected activity occurred when Plaintiff met with Boeing Senior Manager, Anthony Coney. (Dkt. No. 10 at 24-25) (citing Dkt. No. 8-1 at 6). Plaintiff alleges the catalyst for the meeting with Coney was an argument he had with Hormaza in October or November 2019 "regarding [Plaintiff's] work assignment" where Hormaza told Plaintiff to stay late to finish job assignments. (Dkt. No. 8-1 at 5, 6). Plaintiff alleges the work assigned to him by Mason, his direct supervisor, precluded him from completing the work assigned by Hormaza. (*Id.*). Coney asked if Plaintiff wanted to report the incident to Human Resources, to which Plaintiff declined "because [he] wanted to work it out." (*Id.*). Plaintiff was terminated by Mason in January 2020. (Dkt. No. 8-1 at 6).

The Magistrate Judge determined the allegations in the complaint fail to support an inference of adverse action based on Plaintiff's protected activity. Plaintiff alleged "Defendant treated the Plaintiff differently regarding the terms and conditions he reported discriminatory actions. The Plaintiff suffered retaliation for his complaints regarding discrimination." (Dkt. No. 1-1 at 14) (errors in original). Other than this statement, Plaintiff fails to allege other examples of

retaliatory treatment after he met with Coney. The Court overrules Plaintiff's objections. The Magistrate Judge correctly determined that Plaintiff failed to allege a connection between his meeting with Coney and any adverse employment action. (Dkt. No. 10 at 26). Defendant's motion to dismiss Plaintiff's Title VII retaliation claim is granted.

### e) Violations of FMLA

Defendant moves to dismiss Plaintiff's FMLA claim. The Magistrate Judge determined Plaintiff's complaint fails to state a claim showing retaliation or interference under the FMLA. (Dkt. No. 10 at 28-30). Plaintiff objects to this finding on the ground the Magistrate Judge failed to consider that he "requested FMLA while in the Philippines." (Dkt. No. 12 at 8). Plaintiff does not cite to allegations in the complaint to support this contention. To analyze an FMLA claim under either an interference or retaliation framework, Plaintiff must first establish that his medical condition makes him eligible for FMLA leave. The FMLA states a "serious health condition" is that which "makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "Serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care . . . or (B) continuing treatment by a health care provider." *Id*. § 2611(A)-(B).

The Magistrate Judge determined that Plaintiff failed to allege any medical condition that would qualify him for FMLA leave upon his termination, or that triggered Defendant's duty to provide FMLA leave. The complaint alleges Plaintiff's anxiety is a "serious medical condition." (Dkt. No. 1-1 at 15). In his conversation with Boeing investigators, Plaintiff explained he "had applied for and received FMLA within in the last year of his employment," but he does not know the "date [he] last used it" and does not know "whether [he] had an FMLA balance available . . . as of January 8, 2020." (Dkt. No. 8-1 at 5). Plaintiff does not indicate whether his prior use of

FMLA was related to the severe anxiety that led to his hospital visit in the Philippines.  Plaintiff states that after his anxiety attack in the Philippines, he called Mason who instructed him to contact "Total Access if you will use FMLA to cover the absence."  (*Id.*).  Plaintiff indicates he did not apply for FMLA.  (*Id.*).  Plaintiff's medical certificate states his visit was a "[r]outine follow-up checkup."  (*Id.* at 11).  The complaint does not allege any additional facts to infer that Plaintiff's anxiety qualified as an eligible condition under the FMLA at the time of his termination.  The Court overrules Plaintiff's objection.  The Court agrees with the finding of the Magistrate Judge that Plaintiff failed to allege any additional facts showing he was entitled to FMLA benefits at the time of termination.  Defendant's motion to dismiss is granted as to Plaintiff's FMLA claim.

## IV.     <u>Conclusion</u>

For the reasons stated above, the Court **ADOPTS IN PART** the R & R as the Order of the Court.  (Dkt. No. 10).  The Court **DECLINES TO ADOPT** the determination of the Magistrate Judge that Plaintiff fails to assert a Title VII hostile work environment claim at Page 20, Line 2-Page 21, Line 3 and Page 30, Lines 11-12. (Dkt. No. 10). The R & R is otherwise **ADOPTED**. Defendant's motion to dismiss is **GRANTED** as to Plaintiff's ADA discrimination claim; Title VII retaliation claim; and FMLA retaliation claim.  (Dkt. No. 3). The motion to dismiss is **DENIED** as to Plaintiff's Title VII national origin discrimination claim; race discrimination claim pursuant to Title VII and 42 U.S.C. § 1981; and Title VII hostile work environment claim.

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

January 25, 2023
Charleston, South Carolina